**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MILTON GREGORY, ANGEL RIVERA, CARL WRIGHT, and JOEL LUGO, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RIVERBAY CORP., and RESIDENTIAL MANAGEMENT GROUP LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT,<br><br>Defendants. | Civil Case No.: 23-cv-9481<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Milton Gregory, Angel Rivera, Carl Wright, and Joel Lugo (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, hereby allege the following against Defendants Riverbay Corp. ("Riverbay") and Residential Management Group LLC d/b/a Douglas Elliman Property Management ("Douglas Elliman") (collectively, "Defendants"):

## NATURE OF THE CLAIMS

1.     Plaintiffs, on behalf of themselves and all current and former similarly situated Sergeants & Lieutenants ("Officers") employed by Defendants, bring this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Law §§ 190, *et seq.* and 650, *et seq.* ("NYLL"), to recover unpaid wages, unpaid overtime compensation, and liquidated damages.

2.     Defendants have implemented a systemic policy of intentionally misclassifying Officers as exempt and unlawfully denying them any and all overtime wages and even failing to pay them for all hours worked.

3.      Indeed, Officers are <u>never</u> paid at one and one-half times their regular rates of pay for any hours worked over 40 in a workweek.  Instead, as further explained herein, Defendants either do not compensate Officers at all for these hours worked, or they unlawfully compensate Officers for such overtime hours on a straight-time basis (hour-for-hour) in either Chart Time (up to a maximum of eight hours per month) or in compensatory time-off ("Comp Time").

4.      Additionally, Defendants engage in a willful policy and practice of requiring Officers to perform extensive pre- and post-shift work while implementing a uniform timekeeping system that automatically cuts all work time outside each Officer's scheduled tour hours – thereby forcing Officers to perform such pre- and post-shift work off-the-clock without any compensation.

5.      Defendants' company-wide policies and practices affect all Officers and the resulting violations of the FLSA and NYLL are continuous and ongoing.

6.      Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other Officers who performed work for Defendants at any time during the full statute of limitations period.

7.      Plaintiffs also bring their claims under the NYLL as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated persons employed by Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

8.      Pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

9.      This Court also has subject matter jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

10.     The Court also has supplemental jurisdiction over Plaintiffs' related claims arising under State and local law pursuant to 28 U.S.C. § 1367.

11.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

12.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

**A.**     **Plaintiffs**

13.     Plaintiff Milton Gregory ("Gregory") is a resident of the State of New York and has been employed by Defendants as a Sergeant from January 2012 through the present.  At all relevant times, Gregory was an "employee" of Defendants within the meaning of the FLSA and NYLL.

14.     Plaintiff Angel Rivera ("Rivera") is a resident of the State of New York and has been employed by Defendants as a Sergeant from August 2022 through the present.  At all relevant times, Rivera was an "employee" of Defendants within the meaning of the FLSA and NYLL.

15.     Plaintiff Carl Wright ("Wright") is a resident of the State of New York and was employed by Defendants as a Sergeant from approximately February 2008 to August 2021 and has been employed by Defendants as a Lieutenant from August 2021 through the present.  At all relevant times, Wright was an "employee" of Defendants within the meaning of the FLSA and NYLL.

16.     Plaintiff Joel Lugo ("Lugo") is a resident of the State of New York and has been employed by Defendants as a Sergeant from September 2019 through the present.  At all relevant times, Lugo was an "employee" of Defendants within the meaning of the FLSA and NYLL.

**B.**    **Defendant Riverbay**

17.    Defendant Riverbay is a privately held company conducting business in the Southern District of New York.  Riverbay is established and incorporated under the laws of New York and is headquartered in New York.

18.    Riverbay manages Co-op City, located in the Baychester section of the borough of the Bronx in northeast New York City.  Co-op City is the largest residential housing development in the United States.  Riverbay manages 15,372 residential units in 35 high-rise buildings and seven townhouse clusters consisting of garden and duplex apartments.

19.    At all relevant times, Riverbay was an "employer" of Plaintiffs within the meaning of the FLSA and NYLL.

20.    Upon information and belief, Riverbay exercises control over how the Officers' overtime rates are calculated and paid – or not paid.

21.    Upon information and belief, Riverbay maintains the Officers' employment records and all other documents relating to Human Resources, benefits, and payroll.

**C.**    **Defendant Douglas Elliman**

22.    Defendant Douglas Elliman specializes in residential property management throughout New York City.  Douglas Elliman is the exclusive property manager for all of Riverbay's residential and commercial space.

23.    At all relevant times, Douglas Elliman was an "employer" of Plaintiffs within the meaning of the FLSA and NYLL.

24.    Upon information and belief, Douglas Elliman handles employee relations issues of the Officers on behalf of Riverbay.

25.    Upon information and belief, Douglas Elliman handles Officer complaints relating

to payroll, timekeeping, and compensation practices at issue in this case.

26.     Upon information and belief, Douglas Elliman exercises control over how the Officers' overtime rates are calculated and paid – or not paid.

27.     Upon information and belief, Douglas Elliman exercises control over Officer promotions and discipline.

28.     At all relevant times, Defendants Riverbay and Douglas Elliman were, jointly and individually, "employers" of Plaintiffs, within the meaning of the FLSA and NYLL.

29.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over employees.

## FACTS

### A.     Background

30.     Plaintiffs all work for Defendants as Sergeants and Lieutenants ("Officers").

31.     The Officers' work week is defined as seven consecutive days, spanning Sunday through Saturday, with their regularly scheduled pay days being every Thursday.

32.     Officers are regularly scheduled to work five 8-hour tours, for a total of 40 hours per work week.

33.     Officers are regularly scheduled to work the following tours: (i) 12:00 a.m. to 8:00 a.m. (8 hours); (ii) 8:00 a.m. to 4:00 p.m. (8 hours); and (iii) 4:00 p.m. to 12:00 a.m. (8 hours).

34.     Defendants require Officers to engage in "one-for-one relief" or "face-to-face-relief" following the completion of a tour.  This means that an outgoing Officer cannot leave until an incoming Officer arrives.

### B.     Defendants' Unlawful Payment Scheme

35.     Starting in or around early 2017, Defendants implemented a company-wide policy

of misclassifying Officers as exempt supervisors and denying them any and all overtime compensation.

36.    Since then, Officers were <u>never</u> paid one and one-half times their regular rates of pay – let alone their properly calculated regular rates of pay which should have included nightshift differentials and longevity pay as required by law[1] – for any hours worked over 40 in a work week.

37.    Officers are either not compensated at all for these hours, or they are unlawfully compensated for such overtime hours on a straight-time basis (hour-for-hour) in either Chart Time (up to a maximum of eight hour per month) or in compensatory time-off ("Comp Time").

38.    Each month, the first eight hours of overtime worked is recorded as Chart Time.

39.    Once eight hours of Chart Time is accumulated each month, it may be redeemed for cash (only at the straight-time rate of pay), up to a maximum of eight hours per month.

40.    All hours worked less than eight hours are automatically deleted at the end of each month and Officers are not paid at all for any such work.

41.    After Chart Time is fully accumulated, additional overtime hours worked are either not compensated at all, or they are only compensated through Comp Time on a straight-time (hour-for-hour) basis.

42.    Prior to March 2023, Officers were permitted to redeem their accumulated Comp Time for cash (only at the straight-time rate of pay).

43.    Starting in March 2023, Defendants no longer permitted Officers to redeem their earned Comp Time for cash.

44.    Additionally, starting in March 2023, Defendants implemented a new company-

---

[1] Pursuant to 29 C.F.R. § 778.207, "nightshift differentials" and longevity pay (which is paid without regard to the number of hours worked) are considered non-overtime premiums and must be included in the regular rate of pay, upon which the overtime rate is computed.

wide policy that restricted all Officers' ability to earn Comp Time to only when they worked four or more consecutive overtime hours – and even then, Comp Time could no longer be redeemed for cash.

45.     Thus, once eight hours of Chart Time is fully accumulated each month, all overtime hours worked are completely uncompensated (neither through cash nor Comp Time) unless they amount to four or more consecutive overtime hours worked – at which point they are recorded only as Comp Time (on an hour-for-hour, straight-time basis), which can no longer be redeemed for cash.

46.     Defendants' company-wide policy of requiring Officers to work off-the-clock, or offering limited cash payments on a straight-time basis or future time-off (in the form of Comp Time) under limited circumstances, in lieu of properly calculated overtime payments, is a direct violation of the FLSA and NYLL.

**C.    Officers Are Required To Perform Compensable Pre-Shift And Post-Shift Work Off-The-Clock**

47.     All Officers regularly perform "pre-shift" work before their scheduled tours start.

48.     Officers' pre-shift work consists of, *inter alia*: (i) reviewing tour sheets and incoming reports from the end of the previous tour; (ii) conferring about starting assignment and potential changes or switches in positions prior to roll call; (iii) selecting posts and assignments for unscheduled tours; (iv) conferring with dispatchers about officer location; (v) reviewing late reports, arrest reports, and "unusuals" reports; (vi) rebooting the computer and logging in; (vii) checking and responding to emails regarding events, incidents, and issues pertinent to the upcoming tour; (viii) reviewing alerts and postings; (ix) preparing for roll call; (x) signing out necessary equipment; (xi) testing the equipment to ensure functionality; (xii) setting up classrooms and preparing equipment for training; (xiii) checking out keys and vehicles; and (xiv) completing

the accompanying paperwork associated with checking out said vehicles.

49.    This pre-shift work must be completed before the start of each tour.

50.    Plaintiffs and other Officers routinely start working 20 minutes to an hour before their scheduled tour start-times in order to complete all of their pre-shift work.

51.    All Officers also regularly perform "post-shift" work after their scheduled tours end.

52.    This post-shift work consists of, *inter alia*: (i) waiting to be relieved by incoming Officers; (ii) preparing all arrest reports, "unusuals" reports, and regular damage reports; (iii) logging all such reports into the computer system; (iv) preparing, submitting, and logging various paperwork relating to complaints and general resident care; (v) coordinating with other agencies, such as the NYPD, to process suspected criminals; (vi) providing statements to the District Attorney's Office regarding various individuals and cases; (v) performing continuation of case work, such as handling of prisoners; (vi) responding to emergency calls; (vii) handling extended assignments; and (viii) returning equipment.

53.    This post-shift compensable work typically takes approximately 20 minutes to 1.5 hours, and must be completed at the end of an Officer's tour.

54.    Defendants recognize that this pre- and post-shift work is compensable by permitted Officers to record **some** of such hours worked as Chart Time – which could be redeemed for cash only at a straight-time rate of pay.

55.    Indeed, Officers may only claim up to a maximum of eight hours of such compensable work each month.

56.    If eight hours are not accumulated by the end of each month, then all such hours worked are automatically deleted, and Officers are paid nothing at all for all such time worked.

57.    If Chart Time is fully accumulated, then Officers are required to work all such pre- and post-shift work off-the-clock, without any compensation.

58.    As such, Defendants' unlawful timekeeping and payroll policies automatically cut Officers' work time by approximately 3.5 to 12.5 hours per week.

59.    Defendants' company-wide timekeeping program logs each Officer's actual clock-in and clock-out times.

60.    This timekeeping program is also programmed with each Officers' scheduled tour times.

61.    Once Chart Time is satisfied, Defendants' timekeeping program automatically rounds the Officers' clock-in times to their scheduled tour start-times, and it automatically rounds the Officers' clock-out times to their scheduled tour end-times, for payroll purposes.

62.    Therefore, once Chart Time is fully accumulated, Defendants' company-wide timekeeping and payroll policies and practices shave recorded work time and only give Officers credit for work time that is within their scheduled tour times, even though they routinely clock-in and perform work before their scheduled tour start-times and they routinely perform work and clock-out after their scheduled tour end-times.

63.    For example, if an Officer scheduled to work the 8 a.m. to 4 p.m. tour clocked-in and began working at 7:30 a.m. and then finished working and clocked-out at 4:30 p.m., then Defendants' timekeeping system would record the actual nine hours of work but would automatically cut the extra hour of work that was outside of the Officer's eight-hour scheduled tour.

64.    However, if that same Officer arrived at 8:03 a.m. (three minutes late) for his 8 a.m. tour, then the late clock-in would be recorded, but the clock-in time would automatically be

rounded forward in 15-minute increments to 8:15 a.m. for payroll purposes.  The Officer would continue working, but Defendants' timekeeping and payroll system would automatically shave all time worked before 8:15 a.m. – which would be 12 minutes in this example.

65.    Also, the Officer would be subject to potential discipline for arriving to work late, including a formal write-up.

66.    Indeed, Defendants' timekeeping and payroll system never rounds time in favor of the Officers, but always rounds time in favor of the Defendants.

67.    Therefore, once Chart Time is satisfied, all work time that is performed before the scheduled tour start-time, including all pre-shift work, is uncompensated, off-the-clock work.

68.    Likewise, all post-shift work that is performed after the scheduled tour end-time is also uncompensated, off-the-clock work.

69.    By way of example, Wright's time for the work week spanning from July 10, 2022 to July 16, 2022, illustrates Defendants' practice of shaving recorded work time.  According to Defendants' time records, Wright worked 45 hours and 5 minutes but was only paid for 40 hours during this work week with no overtime compensation.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 5 hours and 5 minutes.

70.    As another example, Rivera's time records for the work week spanning from September 11, 2022 to September 17, 2022, show that he worked 42 hours and 41 minutes but was only paid for 40 hours during this work week with no overtime premium.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 2 hours and 41 minutes.

71.    As another example, Gregory's time records for the work week spanning from May 8, 2022 to May 14, 2022, show that he worked 43 hours and 36 minutes but was only paid for 40

hours during this work week with no overtime premium. Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 3 hours and 36 minutes.

72.    As a fourth example, Lugo's time records for the work week spanning from January 9, 2022 to January 15, 2022, show that he worked 45 hours and 15 minutes but was only paid for 40 hours during this work week. Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 5 hours and 15 minutes.

73.    Defendants' shaving of Plaintiffs' work hours is representative of Defendants' practices with respect to all other Officers.

74.    This shaved time is compensable working time as Defendants have a policy and practice of requiring Officers to perform pre-shift and post-shift work, all outside their scheduled tour times.

75.    Furthermore, Defendants have acknowledged that this working time is compensable time by providing Officers with Chart Time specifically in recognition that such pre- and post-shift work is required and compensable.

76.    However, Chart Time is limited to only eight hours each month and is redeemable for cash at only the straight-time rate of pay.

77.    Defendants' payment of Chart Time fails to compensate Officers for their pre- and post-shift work at the correctly calculated overtime premium rate.

78.    Defendants engage in the same timekeeping and payroll practices with respect to all Officers and, thus, all Officers are subject to these unlawful payment policies.

79.    Defendants have acted willfully and deliberately in maintaining intentional practices of improperly shaving the Officers' work time, forcing them to perform off-the-clock work, and denying them properly calculated overtime wages for their overtime work.

80.     Due to Defendants' unlawful time-shaving policies and practices, the Officers' total hours are deflated by approximately 3.5 to 12.5 hours per work week, resulting in an unlawful failure to pay wages, including overtime wages.

**D.     Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

81.     The NYLL requires that employers, including the Defendants, provide Officers with a Notice of Pay Rate, which includes the following information: "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

82.     During the statutory period, Defendants did not provide Plaintiffs or any other Officers with Notices of Pay Rate.

83.     The NYLL also requires that employers, including Defendants, issue or provide Officers with accurate wage statements with each payment of wages.

84.     Defendants never furnished Plaintiffs or any of the other Officers with accurate wage statements during the statutory period.

85.     As a result of Defendants' failure to furnish Notices of Pay Rate and accurate wage statements, Plaintiffs and the Officers have suffered concrete harm.

86.     Specifically, Plaintiffs and the Officers have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

## FLSA COLLECTIVE ACTION ALLEGATIONS

87.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated Officers employed by Defendants during the full statute of limitations period (the "FLSA Collective").

88.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) shaving their work time and thereby reducing their hours worked and thus their overtime compensation; (ii) failing to compensate Officers at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; and (iii) improperly offering private sector employees Comp Time in lieu of lawfully required overtime compensation.

89.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties are not exempt from the overtime provisions of the FLSA.

90.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

91.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid overtime wages, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

92.    While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, upon information and belief, there are approximately 50-100 other similarly situated Officers

employed by Defendants during the full statute of limitations period.

93.    Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

94.    Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants as Officers during the full statute of limitations period, along with their last known addresses, telephone numbers, and e-mail addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

95.    Plaintiffs bring this action, in part, as a class action under the NYLL as well as all applicable regulations thereunder.

### A.    Class Definition

96.    Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other Officers employed by Defendants at any time during the full statute of limitations period (the "Class").

97.    Plaintiffs allege, on behalf of themselves and the Class, that Defendants violated the NYLL by, *inter alia*: (i) shaving their work time and thereby reducing their hours worked and thus their compensation; (ii) failing to pay Officers for all hours worked at their established rate of pay; (iii) failing to compensate Officers at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; (iii) improperly offering private sector employees Comp Time in lieu of lawfully required overtime compensation; and (iv) failing to furnish Officers with Notices of Pay Rate and accurate wage statements.

98.    Plaintiffs and the Class have standing to seek such relief because of the adverse

effects that Defendants' wage practices have had on them individually and as a group.

99.     The wage practices described herein are part of Defendants' normal course of conduct.

100.     Pursuant to FRCP 23, Plaintiffs' NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class.

**B.     <u>Numerosity and Impracticability of Joinder</u>**

101.     The members of the Class are so numerous that joinder is impracticable.

102.     While the exact number of the members of the Class is unknown to Plaintiffs at this time, upon information and belief, there are approximately 100-150 members of the Class.

103.     Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.     <u>Common Questions of Law and Fact</u>**

104.     Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

105.     Indeed, there are few, if any, purely individual issues in this action.

106.     The questions of law and fact that are common to Plaintiffs and the Class include, without limitation:

(a)     Whether Defendants failed to pay Plaintiffs and the Class all overtime wages owed to them;

(b)     Whether Defendants engaged in a pattern and practice of forcing, coercing, or permitting Plaintiffs and Class member to perform work for Defendants' benefit which was not compensated;

(c)     Whether Defendants' policy of failing to pay workers was instituted willfully or with

reckless disregard of the law;

(d)    Whether Defendants failed to furnish Plaintiffs and the Class with Notices of Pay

Rate and accurate wage statements;

(e)    Whether Plaintiffs and the Class are entitled to liquidated damages and injunctive

relief.

107.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D.    Typicality of Claims and Relief Sought**

108.    Plaintiffs' claims are typical of the claims of the members of the Class they seek to

represent.

109.    Plaintiffs and the Class work or have worked for Defendants, and are or were subject

to the same compensation policies and practices.

110.    The wage violations suffered by Plaintiffs, and the damages resulting therefrom, are

typical of Defendants' treatment of Officers, generally, and of the Class, specifically.

111.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.    Adequacy of Representation**

112.    Plaintiffs will fairly and adequately protect the interests of the Class because

Plaintiffs' interests are coextensive and aligned with those of the members of the Class.

113.    Plaintiffs have no interests adverse to the Class they seek to represent.

114.    Plaintiffs are willing and able to represent the Class fairly and vigorously, in part

because they do not assert any individual claims separate and apart from the Class they seek to

represent.

115.    Plaintiffs have retained competent counsel who are qualified and experienced in

employment class action litigation and able to meet the demands necessary to litigate a class action

of this size and complexity.

116.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.    Requirements of Rule 23(b)(1)**

117.    Without certification of the Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

118.    Accordingly, certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Class, and Defendants.

119.    By filing this Complaint, Plaintiffs preserve the rights of the members of the Class with respect to the statute of limitations on their claims.

120.    Therefore, failing to certify the Class would substantially impair and/or impede the ability of the members of the Class to protect their interests.

**G.    Requirements of Rule 23(b)(2)**

121.    Defendants acted on grounds, as described herein, generally applicable to Plaintiffs and the Class by, *inter alia*: (i) unlawfully requiring Plaintiffs and the Class to perform off-the-clock work for which they received no compensation; (ii) shaving their work time and thereby reducing their recorded hours worked and thus their overtime compensation; (iii) failing to compensate Plaintiffs and the Class at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; (iv) improperly offering private sector employees Comp Time in lieu of lawfully required overtime compensation; and (v) failing to furnish Plaintiffs

and the Class with Notices of Pay Rate and accurate wage statements.

122.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the Class as a whole.

123.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, overtime wages.

124.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the Class's entitlement to monetary and non-monetary remedies for such wage violations.

125.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H.    Requirements of Rule 23(b)(3)**

126.    The common issues of fact and law affecting Plaintiffs' claims and those of the Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

127.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and those of the Class.

128.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the Class to pursue their claims individually.

129.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the Class (they must have worked for Defendants as Officers during the statutory period), as well as the common questions of law and fact described herein.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME
### (*On Behalf of Plaintiffs and the FLSA Collective*)

130.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

131.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

132.    Defendants are employers under FLSA § 203(d).

133.    Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA Collective one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

134.    Throughout the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rates of pay for hours worked in excess of 40 hours in a workweek.

135.    As a result of Defendants' failure to compensate Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

136.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

137.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME**
***(On Behalf of Plaintiffs and the Class)***

138.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

139.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

140.    The NYLL requires covered employers, including Defendants, to compensate Officers at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

141.    Plaintiffs and the Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

142.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for hours worked in excess of 40 hours in a workweek.

143.    As a result of Defendants' failure to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

144.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

145.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter*

*alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**
(***On Behalf of Plaintiffs and the Class***)

146.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

147.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

148.    The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek.

149.    Plaintiffs and the Class were not exempt from the requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked in a workweek, during the full statute of limitations period.

150.    Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiffs and the Class at their established regular rates of pay for all hours worked.

151.    As a result of Defendants' failure to compensate Plaintiffs and the Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

152.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

153.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the

Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE
#### (*On Behalf of Plaintiffs and the Class*)

154.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

155.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

156.    NYLL § 195(1) requires covered employers, including Defendants, to provide Officers with Notices of Pay Rate containing the following information:  "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

157.    Plaintiffs and the Class were not exempt from the requirement that Defendants provide them with notices of pay rate under NYLL § 195(1).

158.    During the statute of limitations period, Defendants engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the Class under NYLL § 195(1).

159.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and

the Class, Defendants have violated, *inter alia*, NYLL § 195(1).

160.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper Notices of Pay Rate to Plaintiffs and the Class in accordance with the NYLL.

161.    Further, due to Defendants' failure to provide Notices of Pay Rate, Plaintiffs and the Class have suffered concrete harm.

162.    Specifically, Plaintiffs and the Class have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

163.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
**(*On Behalf of Plaintiffs and the Class*)**

164.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

165.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

166.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . ; and net wages."

167. Plaintiffs and the Class were not exempt from the requirement that Defendants provide them with accurate wage statements under NYLL § 195(3).

168. Throughout the statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiffs and the Class under NYLL § 195(3).

169. As a result of Defendants' failure to furnish accurate wage statements to Plaintiffs and the Class, Defendants have violated, *inter alia*, NYLL § 195(3).

170. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiffs and the Class in accordance with the NYLL.

171. Further, due to Defendants' failure to furnish accurate wage statements, Plaintiffs and the Class have suffered concrete harm.

172. Specifically, Plaintiffs and the Class have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

173. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class respectfully request that this Court:

A.      Declare that the practices complained of herein are unlawful under applicable federal law;

B.      Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.      Designate Plaintiffs as the representatives of the FLSA Collective, and their counsel of record as class counsel;

E.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

F.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

G.    Designate Plaintiffs as the representatives of the Class, and their counsel of record as class counsel;

H.    Determine the damages sustained by Plaintiffs and the Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs, and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

I.    Award Plaintiffs, the FLSA Collective, and the Class an additional equal amount as liquidated damages;

J.    Award Plaintiffs, the FLSA Collective, and the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

K.    Grant Plaintiffs, the FLSA Collective, and the Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, the FLSA Collective, and Class hereby demand a trial by jury on all issues of fact and damages.

Dated: October 27, 2023                    **FARUQI & FARUQI, LLP**

By: _____*/s/ Innessa M. Huot*_____
        Innessa M. Huot
        Shawn R. Clark

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: ihuot@faruqilaw.com
            sclark@faruqilaw.com


*Attorneys for Plaintiffs, the Proposed*
*FLSA Collective, and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MILTON GREGORY, ANGEL RIVERA, CARL WRIGHT, and JOEL LUGO, on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>RIVERBAY CORP., and RESIDENTIAL MANAGEMENT GROUP LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT,<br><br>      Defendants. | Civil Case No.:<br><br>**CONSENT TO SUE** |

I, __Milton Gregory__, have been employed by Defendants as a Sergeant and/or Lieutenant in the last three years and am a named Plaintiff in the above-captioned action, *Gregory, et al. v. Riverbay Corp., et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

   I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): __Milton Gregory__

Signature: _____

Date: __10/27/2023 | 3:48 PM EDT__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MILTON GREGORY, ANGEL RIVERA, CARL WRIGHT, and JOEL LUGO, on behalf of themselves and others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| RIVERBAY CORP., and RESIDENTIAL MANAGEMENT GROUP LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT, | |
| Defendants. | |

I, _____Angel Rivera_____, have been employed by Defendants as a Sergeant and/or Lieutenant in the last three years and am a named Plaintiff in the above-captioned action, *Gregory, et al. v. Riverbay Corp., et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): _____Angel Rivera_____

DocuSigned by:

EF3CF7ADAF82409...

Signature: _____

Date: ___10/27/2023 | 4:57 PM EDT___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MILTON GREGORY, ANGEL RIVERA, CARL WRIGHT, and JOEL LUGO, on behalf of themselves and others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| RIVERBAY CORP., and RESIDENTIAL MANAGEMENT GROUP LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT, | |
| Defendants. | |

I, _____Carl Wright_____, have been employed by Defendants as a Sergeant and/or Lieutenant

in the last three years and am a named Plaintiff in the above-captioned action, *Gregory, et al. v.*

*Riverbay Corp., et al.*, pending in the United States Court for the Southern District of New York.

I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th

Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): ___Carl Wright_____

Signature: _____*Carl Wright*_____
DocuSigned by:
F347FC89313A427...

Date: ___10/27/2023 | 3:57 PM EDT___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MILTON GREGORY, ANGEL RIVERA, CARL WRIGHT, and JOEL LUGO, on behalf of themselves and others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| RIVERBAY CORP., and RESIDENTIAL MANAGEMENT GROUP LLC d/b/a DOUGLAS ELLIMAN PROPERTY MANAGEMENT, | |
| Defendants. | |

I, ___Joel Lugo___, have been employed by Defendants as a Sergeant and/or Lieutenant in the last three years and am a named Plaintiff in the above-captioned action, *Gregory, et al. v. Riverbay Corp., et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): ___Joel Lugo___

DocuSigned by:

*Joel Lugo*
9798B470F3C74D1...

Signature: _____    Date: ___10/27/2023 | 12:51 PM PDT___